

Signed April 29, 2011.

Ronald B. King
United States Chief Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GARY D. MCLAIN AND SHANNON M. MCLAIN, | § | CASE NO. 09-60562-RBK |
| | § | |
| | § | |
| DEBTORS | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| DICKY STANLEY | § | |
| | § | |
| VS. | § | ADVERSARY NO. 09-6016-RBK |
| | § | |
| GARY D. MCLAIN AND | § | |
| SHANNON M. MCLAIN | § | |

**OPINION**

On May 7, 2009, Gary and Shannon McLain filed a Chapter 7 bankruptcy case. On August 10, 2009, Dicky Stanley ("Plaintiff") initiated this adversary proceeding to preclude dischargeability of debt.

Plaintiff and Gary McLain ("Debtor") entered into a written contract in which Debtor agreed to perform renovation and new construction on Plaintiff's existing home (the "Property"). Plaintiff

agreed to pay Debtor $117,511.50 in exchange for Debtor's work on the Property.  After entering into this contract, Plaintiff obtained a one year construction loan from Colonial Savings, F.A. Thereafter, Plaintiff paid Debtor approximately $103,756.04.

The Complaint alleges that Debtor represented that the construction would be completed within six to eight weeks and would be performed in a good and workmanlike manner.  The construction actually began on the Property on January 20, 2003.  Plaintiff asserts that Debtor failed to complete the work as agreed, and as a result, he "had to reside in a house which was, at best, merely forty percent complete."  Furthermore, Plaintiff alleges that Debtor ceased work on the Property on September 20, 2003, and "instructed all subcontractors to walk off the job."

Plaintiff filed suit against Debtor in the 413th District Court in Johnson County, Texas.  A trial was held on December 3, 2007, and on October 29, 2008, the court signed a judgment on the jury verdict awarding Plaintiff $277,412.88.  The jury found Debtor "to have breached the contract with Plaintiff, without excuse, and to have violated the Texas Deceptive Trade Practices Act" regarding the work to be performed on Plaintiff's home, either knowingly or intentionally.  The judgment is final and nonappealable.

## DISCUSSION

Plaintiff alleges that the debt owed by Debtor is not dischargeable pursuant to sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code based on Debtor's actions and representations.  The burden of proof is on the Plaintiff to prove nondischargeability under section 523(a)(2)(A) or (a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-91 (1991); *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

2

1.      *Dischargeability under section 523(a)(2)(A)*.

Plaintiff first asserts that the debt owed by Debtor is nondischargeable under section

523(a)(2)(A) of the Bankruptcy Code.  Section 523(a)(2)(A) excepts from dischargeability any debt

that was obtained by false pretenses, false representation, or fraud.  Section 523(a)(2)(A) provides:

a.      A discharge . . . does not discharge an individual debtor from any debt–

. . .

2.      for money, property, services, or an extension, renewal, or refinancing
of credit, to the extent obtained by–

A.      false pretenses, a false representation, or actual fraud, other
than a statement respecting the debtor's or an insider's
financial condition;

11 U.S.C. § 523(a)(2)(A).  A debt is nondischargeable pursuant to this section if a creditor shows

that: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the

representation was made with the purpose and intention of deceiving the creditor; (4) the creditor

reasonably relied on such representation; and (5) the creditor sustained a loss as a result of the

representation.  *See AT&T Universal Card Servs. v. Mercer* (*In re Mercer*), 246 F.3d 391, 403 (5th

Cir. 2001).  Plaintiff asserts that Debtor made numerous representations that he knew to be false,

including: (1) that work on the remodeling project would be completed within six to eight weeks;

and (2) that Plaintiff's family could continue to reside in the house during the entirety of the

construction.

Plaintiff argues that he relied to his detriment on these representations, that he would not have

entered into the contract with Debtor had he not been misled, and that he incurred damages.  The

two principal issues are whether such representations were made by Debtor to Plaintiff, and whether

3

such representations were made with knowledge of their falsity and with the intention of deceiving Plaintiff.

a.    ***Element One: "The debtor made a representation."***

First, to prove nondischargeability under section 523(a)(2)(A), a plaintiff must show that "the debtor made a representation."  In this case, it is hotly disputed what representations were actually made by Debtor to Plaintiff.  Plaintiff states that Debtor orally represented that the project would take only "six to eight weeks . . . for the entire scope of the contract."  But, Debtor testified at the trial that he told Plaintiff that the project would "take six to eight months" rather than weeks, and the written contract did not address the issue.  Debtor testified that because of his extensive experience in construction, he would never represent to a client that a project of this magnitude could be completed in such a short amount of time.  Debtor also argues that the term of the construction financing with Colonial Savings was for one year, which further evidences that the construction project was expected to take longer than six to eight weeks.

Plaintiff further argues that Debtor orally represented to him that the home would be habitable during the construction project.  Debtor contends, however, that he never represented that the home would be habitable during the construction project, and that the written contract did not address occupancy during construction.  On the contrary, Debtor testified that he and Plaintiff agreed that Plaintiff would move all of the furniture and animals out of the house during the project.  Because Plaintiff never moved out of the house, Debtor concluded that it was Plaintiff's choice to remain in the house.  The Court finds that there is insufficient evidence of fraud or misrepresentation with regard to the time of completion and occupancy during construction.

b.      *Element Two: "The debtor knew the representation was false."*

As to the second element of section 523(a)(2)(A), Plaintiff points to Debtor's failure to complete the work, as provided under the contract, as evidence that Debtor knew the representations he made to Plaintiff were false.  To prove a claim under section 523(a)(2)(A), a plaintiff must show that the debtor knew the representation was false.  Section 523(a)(2)(A) "may make a creditor's claim nondischargeable if the debtor had no intention of performing any of the obligations under the contract.  This intent may be inferred from the fact that the debtor failed to take any steps to perform under the contract."  4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (16th ed. 2011).  Although Plaintiff asserts that Debtor's abandonment of the job site shows intent, it appears that Debtor's actions were the result of financial disagreements with Plaintiff.  The testimony at trial revealed that Debtor and Plaintiff had differing views on which party was owed money at the time Debtor left the job site.  While Plaintiff claims that Debtor owed him $4,968.86 when he walked off the job, Debtor contends that at that time, Plaintiff actually owed him roughly $3,200.00.  Although the state court judgment established Debtor's liability for breach of contract as res judicata, it is not preclusive on the issue of misrepresentation or fraudulent intent.  The Court finds that Plaintiff has not carried his burden of proof on the issue of false representation or fraudulent intent.  The parties had a disagreement over certain extra charges asserted by Debtor, which sadly resulted in the cessation of all work on the job.

2.      *Dischargeability under section 523(a)(6)*.

Plaintiff next asserts that the debt owed by Debtor is nondischargeable under section 523(a)(6) of the Bankruptcy Code.  Section 523(a)(6) excepts from discharge any debt for willful or malicious injury to another entity or to the property of another entity.  11 U.S.C.

5

§ 523(a)(6).  The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), clarified that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id*. (emphasis in original).  In light of *Geiger*, the Fifth Circuit Court of Appeals stated that the test for willful and malicious injury is whether there exists either an objective substantial certainty of harm or a subjective motive to cause harm on the part of the debtor.  *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).  The burden is on Plaintiff to prove, by a preponderance of the evidence, the objective substantial certainty of harm or a subjective motive to cause harm on the part of the Debtor.

Plaintiff asserts that the evidence presented at trial established that Debtor's actions met the requirements of section 523(a)(6).  Plaintiff's Trial Brief states that Debtor "ceased work on the Stanley home on or about September 20, 2003, prior to completion.  Debtor never returned to complete the work.  Debtor further instructed all subcontractors to walk off the job."  Plaintiff argues that because the construction had yet to be completed, even though Defendant already received payment, Debtor's failure to complete the project and instruction to the subcontractors to cease work constituted willful and intentional injury to Plaintiff.

Debtor, however, asserts that he did not walk off the job to cause willful and intentional injury to Plaintiff, but rather because he was not paid overages for tile purchases for the Property.  After absorbing a number of extras and cost overruns, Debtor informed Plaintiff that Debtor "was not a bank."  Debtor asserts that he did not intend to abandon the job site and actually planned to return to the site to complete the project.

6

The contract between Debtor and Plaintiff specifies that the contract "contains the entire agreement of the parties and cannot be changed except by their written agreement." The overages for the tile were not contained in any written agreement. Even if Debtor was not entitled to payment for the overages, however, his action of leaving the Property does not necessarily indicate a motive on his part to cause harm or a substantial certainty of harm. The Court finds that Debtor did not intend to harm Plaintiff and had no malicious intent in his relations with Plaintiff. Even though Debtor may have breached the contract, Plaintiff did not carry his burden of proof on the issue of willful and malicious injury under section 523(a)(6).

3.   ***Effect of the DTPA judgment.***

Plaintiff obtained a judgment against Debtor in state district court. The state district court jury found Debtor liable for "knowing or intentional violations of the Texas Deceptive Trade Practices Act." There was no issue submitted to the jury regarding fraud or willful and malicious injury. Plaintiff now asserts that the elements utilized to satisfy the DTPA claim in state court compel a finding of nondischargeability under section 523(a)(2)(A) or section 523(a)(6).

The state court DTPA judgment, however, has no preclusive effect on the issue of dischargeability of the debt under section 523(a)(2)(A) or section 523(a)(6). Under Texas law, a knowing violation of the DTPA requires a lesser standard of proof than that required to prove fraud or misrepresentation under section 523(a)(2) or willful and malicious injury under section 523(a)(6). *See **Ragupathi v. Bairrington** (**In re Bairrington***), 183 B.R. 754, 759-61 (Bankr. W.D. Tex. 1995) ("a plaintiff need not prove common law fraud or willful acts in order to establish a 'deceptive trade practice' . . . The element of fraud and a knowing violation of the DTPA possess different elements"). Therefore, the state court judgment finding that Debtor knowingly or intentionally

7

violated the DTPA cannot be utilized under collateral estoppel principles to compel a finding of nondischargeability under section 523(a)(2)(A) or section 523(a)(6).

4.    ***Comparison to Carle***.

***Green v. Carle*** (***In re Carle***), 2010 WL 5394793 (Bankr. W.D. Tex. 2010), which was recently decided by this Court, has some similarities to this case.  In ***Carle***, the debtor ("Carle") and plaintiff, Barbara Green ("Green"), entered into a contract for the construction of Green's new home. Carle represented to Green that he was an experienced home builder, that construction of the home would cost $365,000, that construction would be completed in 8 months, that he employed skilled subcontractors, and that his company was insured.  Based on these representations, Green chose Carle to build her home rather than another contractor.  None of these representations proved to be true, however, and after numerous cost overruns and construction problems, Green sued in state court for breach of contract, negligent misrepresentation, negligence, gross negligence, violation of the Deceptive Trade Practices and Consumer Protection Act, and fraud.  The suit was eventually settled, and an agreed judgment in favor of Green in the amount of $200,000 was signed.

Carle subsequently filed for bankruptcy, and Green filed an objection to dischargeability[1] of the debt owed by Carle to Green based on: (1) fraud under section 523(a)(2)(A); (2) false representation and false pretenses under section 523(a)(2)(A); (3) breach of fiduciary duty, embezzlement, and larceny under section 523(a)(4); and (4) willful and malicious injury under section 523(a)(6).  This Court excepted from discharge the agreed judgment amount of $200,000.

Although ***Carle*** appears on its face to be factually similar to this case, there are distinctions between the two cases that support differing results.  In ***Carle***, this Court found that Carle

---

[1]The objections to discharge under section 727 were denied.

8

misrepresented his past experience as a homebuilder; misrepresented his current ability to build Green's home; and failed to carry out the job in a workmanlike manner. In addition, this Court determined that Green in fact relied on these misrepresentations. In this case, however, fraudulent misrepresentation does not appear to be present. Here, Debtor did not misrepresent his past experience or current ability as a homebuilder. Debtor has 28 years experience as a homebuilder, has constructed over 1800 homes, and has a Better Business Bureau rating of "AAA." Debtor worked on the Property to the best of his ability, and the existing home was in poor condition before he began work. The parties had an unfortunate disagreement over money which led to a shutdown of work on the Property. Thus, the factual scenario that supported a finding of nondischargeability in *Carle* is not present in this case.

## CONCLUSION

A serious disagreement over money resulted in the cessation of work, but Debtor did not make misrepresentations or knowingly and intentionally cause injury. For these reasons, Debtor's indebtedness to Plaintiff is dischargeable. This Opinion constitutes the findings of fact and conclusions of law of this Court under Bankruptcy Rule 7052. A separate judgment will be rendered.

# # #